IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

NANCY L. KUNS,

                Plaintiff,                Case No. 3:11 CV 1540

-vs-

                                                <u>MEMORANDUM   OPINION</u>

FORD MOTOR COMPANY,

                Defendant.

KATZ, J.

      This matter is before the court on defendant Ford Motor Company's motion for summary judgment (Doc. 22.), which the Court grants, and Ms. Kuns' motion to amend the complaint to cure jurisdictional defects (Doc. 32), which the Court also grants.

      Ms. Kuns purchased a new 2010 Mercury Mariner from a Ford dealer in Vermillion, Ohio. The following winter, when a family member closed the rear liftgate, the glass in it shattered. Ms. Kuns had the rear glass replaced at an independent automotive glass installer shortly thereafter, having her insurance pay for the bulk of the cost, and paying the $250 deductible herself. A month later, the glass shattered again when another family member closed the liftgate. Following this breakage, Ms. Kuns took the car back to the dealer. Initially, the Ford dealer refused to replace the glass, but Ms. Kuns persisted in demanding that they remedy the problem and the dealership eventually relented and put in a new and redesigned window assembly. Unbeknownst to Ms. Kuns at the time her windows broke, Ford had become aware that the way in which the liftgate closure was designed could cause glass stress and breakage in this model of car. Ford corrected the design problem in production vehicles, and issued instructions to its dealerships to replace broken windows free of charge in certain circumstances.

Ms. Kuns brought this matter alleging that Ford violated the Magnuson-Moss Warranty Act (MMWA) and breached both express and implied warranties. Ford moved for summary judgment, which Ms. Kuns opposes. As a threshold matter, the Court questioned its subject matter jurisdiction under both the MMWA and the Class Action Fairness Act.

I. JURISDICTION

On December 11, 2012, the Court reviewed its own subject matter jurisdiction, *sua sponte*; observed that the complaint lacked allegations necessary to find jurisdiction; and gave both parties time to brief the question. (Doc. 30.) Defendant Ford Motor Company filed a brief (Doc. 31), and plaintiff Nancy L. Kuns filed both a motion to amend the original complaint (Doc. 32) and a brief responding to Ford's filing (Doc. 33). Both parties argue in favor of this court's jurisdiction.

Federal question jurisdiction appeared to be lacking because Ms. Kuns' only federal claim is a violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* and that statute requires that class actions have at least one hundred named plaintiffs to be brought in federal court. § 2310(d)(3). The general federal jurisdiction statute, 28 U.S.C. § 1331, does not provide the Court with jurisdiction to decide a claim arising under a federal statute that has its own specific – and more restrictive – jurisdictional requirements. (Doc. 30 at 2 (citing *Healy v. Ratta*, 292 U.S. 263, 270 (1934) ("Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.")).) The parties' briefs do not lead the Court to think it misconstrued the statute or that it otherwise has federal question jurisdiction. This moots the parties' arguments about the well-pleaded complaint rule and jurisdiction when federal law

2

completely preempts state law and turns the Court's focus to jurisdiction arising under the Class Action Fairness Act (28 U.S.C. § 1332(d)).

The MMWA allows consumers to bring class actions, but it limits jurisdiction to either "any court of competent jurisdiction in any State or the District of Columbia," 15 U.S.C. § 2310(d)(1)(A), or a federal district court where the action includes one hundred or more named plaintiffs, § 2310(d)(3)(C). Under the Act, "[no] claim shall be cognizable" where it is brought as a class action in a district court and contains fewer than one hundred named plaintiffs. § 2310(d)(3). Nevertheless, a number of courts have found that the later-passed Class Action Fairness Act can render a district court a "court of competent jurisdiction" and permit it to retain jurisdiction where the CAFA requisites are met but the MMWA requisites are not. *Keegan v. Am. Honda Motor Co., Inc.*, 838 F. Supp. 2d 929, 954 (C.D. Cal. 2012) (Assembling cases and noting, "[t]hese cases hold that where the party invoking federal jurisdiction is able to meet his or her burden of proving jurisdiction under CAFA, the absence of at least one hundred named plaintiffs does not prevent the plaintiff from asserting claims under the Magnuson–Moss Warranty Act."); *accord* 9 Bus. & Com. Litig. Fed. Cts. § 101:135 (3d ed.). The parties have not cited – and the Court cannot otherwise find – an indication that the Sixth Circuit Court of Appeals has considered this question and limited MMWA class actions to just those meeting the text of the statute rather than those that meet the CAFA requirements, so the Court can retain jurisdiction if Ms. Kuns meets the CAFA requirements.

CAFA's requirement of minimal diversity is not in question in this matter, but the allegation of the amount in controversy is. Where a plaintiff claims damages in excess of the threshold, only a legal certainty that these are unattainable deprives a court of jurisdiction. *Schultz*

3

*v. Gen. R.V. Ctr.*, 512 F.3d 754, 756 (6th Cir. 2008). However, Ms. Kuns' complaint does not allege that it meets the $5,000,000 CAFA threshold, except to say, "[t]his Court has jurisdiction pursuant to the Class Action Fairness Act by virtue of 28 U.S.C. § 1332(d)." (Compl., Doc. 1 at ¶ 6.) The complaint only alleges Ms. Kuns paid a $250 deductible and the class which she would represent includes more than ten thousand members. (*Id.* at ¶¶ 11, 20.) Because of this, the complaint's face does not allege sufficient damages. This alone does not preclude jurisdiction, however, because Ms. Kuns asks for other damages such as diminution in value and revocation of acceptance. Where the recovery amount is unspecified, courts apply a preponderance of the evidence standard to determine if the complaint states a claim that, more likely than not, meets the threshold. *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993) *abrogated on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010). Ford argues that the Court has jurisdiction because Ms. Kuns seeks the remedy of revocation of acceptance. Ford contends the Court should apply the formula found in *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 883 (6th Cir. 2005), which, it says, produces an amount in controversy of $4,849.65, and, since Ms. Kuns' complaint alleges the class exceeds 10,000 members, the $5,000,000 CAFA threshold is met. (Doc. 31.)

Both state law and the MMWA provide a remedy against a manufacturer, but courts have consistently held that the specific remedy of revocation of acceptance is valid only against the seller of an item, not the manufacturer. *Voytovich v. Bangor Punta Operations, Inc.*, 494 F.2d 1208, 1211 (6th Cir. 1974) (limiting both revocation of acceptance and rescission to actions against the seller, not the manufacturer); *Henderson v. Chrysler Corp.*, 477 N.W.2d 505, 508 (1991) (Michigan law limits the UCC remedy of revocation of acceptance to just the seller, not the manufacturer, because, "revocation is inextricably connected to the contractual relationship

4

between a buyer and a seller."); *Aluminum Line Prods. Co. v. Rolls-Royce Motors, Inc.*, 649 N.E.2d 887, 894 (Ohio Ct. App. 1994) (revocation of acceptance is not a proper remedy against a manufacturer except where the dealer acted as the manufacturer's agent, negotiating terms on its behalf, rather than as a reseller of its product); *Hines v. Mercedes-Benz USA, LLC*, 358 F. Supp. 2d 1222, 1234 n.3 (N.D. Ga. 2005) (assembling cases); *accord* 77A C.J.S. Sales § 592. *But see Gochey v. Bombardier, Inc.*, 572 A.2d 921, 923 (Vt. 1990) (acknowledging that most states disallow revocation against a manufacturer, but agreeing with the three minority states that do allow it). Because the Court cannot find support for revocation of acceptance as a valid remedy against a manufacturer, it cannot find that CAFA's threshold is met using this formula.[1]

While the face of the original complaint lacks allegations sufficient to find jurisdiction under the MMWA or CAFA, Ms. Kuns has filed a motion to amend the complaint and attached a proposed amended complaint. (Doc. 32.) Seeing neither an objection nor obvious prejudice, the Court will allow the amendment. Fed. R. Civ. P. 15(a).

The amended complaint grants the Court jurisdiction because it clarifies that the size of the class at the time of the original complaint was over 860,000 members, which, more likely than not, makes the amount in controversy exceed the threshold. "Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." 28 U.S.C. § 1653. This statute allows amendment of lacking jurisdictional allegations only where jurisdiction actually existed at

---

[1] As a manufacturer undoubtedly familiar with MMWA litigation and as a party to this litigation who has retained highly competent and experienced counsel, Ford's reliance on this calculation without mentioning to the Court that case law strongly disfavors – or even eliminates – its position is deeply concerning. See ABA Model Rules of Prof'l Conduct R. 3.3(a)(2) (Candor Toward the Tribunal). Equally troubling is Ms. Kuns' counsel's nebulous and unexplained position that they do not agree with the method of calculating the valuation.

the time of the complaint. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 831 (1989). Although commonly used to correct questions of citizenship, it applies to insufficient allegations of the amount in controversy also. *E.g. Hart v. Schering-Plough Corp.*, 253 F.3d 272, 274 (7th Cir. 2001) ("Much pain could have been avoided had Hart's complaint correctly identified the stakes. But the fact remains that the amount in controversy on the date of filing was $91,910.42.").

Here, the original complaint was ambiguous as to how large the class would be not only because it said it consisted of more than ten thousand members, but also because it defined class members as including current owners or previous owners, "any of which incurred costs to repair the rear window of the Vehicles due to a sudden and unexpected explosion of the window." (Doc. 1 at ¶ 19.) This creates ambiguity if "any of which" is read to modify both current and former owners, making the class include just those whose window exploded and had to incur costs to repair it. The estimated class size of 10,000 did not resolve this; later discovery revealed that Ford made around 860,000 of these vehicles and knew of only several hundred breakage complaints (Ford letter to NHTSA, Doc. 27-4 at 2-4.), so the 10,000 estimate could be equally too high or too low. The proposed amended complaint contains this same ambiguous sentence, but says, "the Class consists of more than eight hundred thousand members who purchased, leased, or acquired a Vehicle." (Doc. 32-2 at ¶ 25.) This clarifies the ambiguity and adheres to Section 1653; from sheer numbers, the class must have included both *all* current owners with or without broken glass, and any former owner who incurred an expense because the glass broke. Ms. Kuns also updates her allegations of the cost of replacing the windows, but since the amended complaint clarifies the original class size, any relief exceeding $5.78 per class member would, more likely than not, put the amount in controversy over the threshold, so the Court has jurisdiction.

6

## II. CHOICE OF LAW

Neither party has explicitly specified which state's law applies to this dispute but both cite Ohio law. Courts have interpreted this to indicate consent to the court's forum state's law. *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 345 (7th Cir. 2010); *accord Leininger v. Reliastar Life Ins. Co.*, No. 2:06-CV-12249, 2007 WL 2875283, *7 (E.D. Mich. Sept. 28, 2007); *see also Carbonic Products Co. v. Welding & Cutting Supply Co.*, 823 F.2d 553, *2 (6th Cir. 1987) (table) (noting that courts of appeal do not reconsider choice of law where it was not raised at the district court level and would not make an apparent difference). Furthermore, because Ms. Kuns purchased the car in Ohio, the warranty was entered into in Ohio, the glass broke twice in Ohio, and the car was repaired twice in Ohio (at the third party installer and at the Ohio Ford dealer), the dispute meets the requirements of Section 188 of the Conflict of Law Restatement. *See Gries Sports Enters., Inc. v. Modell*, 473 N.E.2d 807, 810 (Ohio 1984) (adopting Section 188); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (instructing courts to use the forum state's conflict of law rules to determine which law applies). The Court will apply Ohio law.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986) (quotations omitted). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party can avoid judgment only by setting forth facts that show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e), "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). The Court must enter summary judgment, "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. United States*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve

factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

IV. ANALYSIS

The MMWA creates two causes of action: (1) a federal right of action for breach of an express or implied warranty, and (2) a right of action for violations of the Act's requirements, such as not disclosing terms and conditions or improperly disclaiming implied warranties. 15 U.S.C. § 2310(d)(1). However, in providing a federal right of action for breach of warranty, the MMWA does not create an additional federal warranty, and only affords a right of action arising from state warranty law. *Temple v. Fleetwood Enterprises, Inc.*, 133 F. App'x 254, 268 (6th Cir. 2005). "In order to state an actionable claim of breach of warranty and/or violation of the Magnuson–Moss Act, a plaintiff must demonstrate that (i) the item at issue was subject to a warranty; (ii) the item did not conform to the warranty; (iii) the seller was given reasonable opportunity to cure any defects; and (iv) the seller failed to cure the defects within a reasonable time or a reasonable number of attempts." *Id.* (citing *Abele v. Bayliner Marine Corp.*, 11 F. Supp. 2d 955, 961 (N.D. Ohio 1997)). Ms. Kuns contends that Ford is liable for: (1) breaching the new vehicle warranty; (2) creating a second express warranty when it indicated to the National Highway Traffic Safety Association that it would cover the cost of replacing a defectively designed window and then breaching that; and (3) breaching implied warranties.

9

A. THE NEW VEHICLE WARRANTY

> Ms. Kuns' car came with a new vehicle warranty that provides in relevant part:
>
> Under your New Vehicle Limited Warranty if: your Ford vehicle is properly operated and maintained, and was taken to a Ford dealership for a warranted repair during the warranty period, then authorized Ford Motor Company dealers will, without charge, repair, replace, or adjust all parts on your vehicle that malfunction or fail during normal use during the applicable coverage period due to manufacturing defect in factory-supplied materials or factory workmanship.

(Warranty, Doc. 29-1 at 8-9.)

Ford maintains that, prior to the first breakage, the window was included as a covered item according to this description. (Reply, Doc. 29 at 3-4.) Ford further claims, "[i]f a vehicle's glass broke and there was no evidence of impact or external damage, the repair would be covered by the Warranty." (*Id.* at 5.) Even though Ms. Kuns did not think the warranty would cover the first broken window, she points to no evidence indicating that Ford refused to repair or replace the broken window. Ford concedes that the window was covered, and the shattering of the glass is undisputedly an indication that the window did not conform to the warranty, so the first and second elements expressed in *Abele*, 11 F. Supp 2d at 961, are not at issue. However, the parties agree that Ms. Kuns took the car to a third party auto glass shop not affiliated with Ford's warranty program after the first breakage, so she did not give Ford a "reasonable opportunity to cure any defects." *Id.*

Ms. Kuns stresses that her reading of the new vehicle warranty left her with the impression that glass breakage was not covered. The parties both acknowledge that broken glass is rarely a valid warranty claim since it is usually the result of impact, which the warranty excludes. (Opposition, Doc. 28-1 at 18; Reply, Doc. 29 at 5.) The general unlikelihood of success in getting such a claim covered, however, does not change the *Abele* elements to show breach of warranty –

10

particularly the requirement that Ms. Kuns allow Ford a reasonable opportunity to cure the defect. 11 F. Supp 2d at 961. Ms. Kuns' rationale would create a futility exception to the requirement to afford the manufacturer an opportunity to honor the warranty and fix the car, but Ms. Kuns has not provided the Court – and the Court cannot otherwise find – authority suggesting she can maintain a breach of warranty claim after not presenting the car to a Ford dealer, even if her reading of the written warranty left her believing Ford would not cover the glass. The Court cannot wade into creating a futility exception to the elements of breach of warranty without something more than Ms. Kuns' reading of the warranty documents, even if her reading was correct. *See Abele*, 11 F. Supp 2d at 961.

After the window broke a second time, Ms. Kuns did take the car to the Ford dealer. At this point, however, the replacement window was no longer subject to the new vehicle warranty because the broken window was an after-market window installed by the third party auto glass shop, not a "manufacturing defect in factory-supplied materials or factory workmanship." (Warranty, Doc. 29-1 at 9.); *See Abele*, 11 F. Supp 2d at 961. Ms. Kuns has not pointed to evidence indicating the new vehicle warranty covered her second broken window. Ms. Kuns did eventually get the window replaced by the dealer, but only after a fair amount of wrangling and her threat to stop making payments and return the car to Ford. While this might raise a question of fact of whether Ford cured the defect in a reasonable time and number of attempts, *see id.*, the fact that the window was not a factory window – and therefore not covered by the new vehicle warranty – precludes this analysis.

11

B. THE TECHNICAL SERVICE BULLETINS

As Ford's quality control learned of higher than expected instances of glass breakage in this vehicle line coupled with consumer complaints requesting refunds, Ford became aware that this vehicle may have a design defect. (NHTSA Letter, Doc. 27-4 at 12-13.) Its own investigation revealed that the way the glass and its strike plate impacted the door caused glass stress and Ford corrected this in its production vehicles by redesigning the liftgate glass with a through-bolt striker rather than a bonded striker. (*Id.* at 10.) Ford issued two Technical Service Bulletins (TSBs) to its authorized warranty service providers (that is, its dealers) informing them that it was aware of a liftgate glass breakage problem on vehicles built before October 15, 2010 and instructing them to replace broken glass – with the redesigned assembly – as a warranty item, as long as no evidence of impact or damage is present. (TSBs, Doc. 27-2.) When Ford responded to the National Highway Traffic Safety Administration about reports of liftgage glass breakage, it said that its new vehicle warranty "normally does not include glass repairs," but that it was instructing its dealers, via the TSBs, to replace the glass with the redesigned assembly wherever there is breakage but they find "no evidence of impact or external damage." (Doc. 27-4 at 13, 10.)

Ms. Kuns says these communications did two things: (1) acknowledged that the new vehicle warranty does not cover the glass and, (2) by instructing dealers to replace the glass, created a "silent recall" that either expanded the new vehicle warranty or created an additional, separate warranty. Further, Ms. Kuns says she can maintain this warranty claim in spite of not taking the car to the dealer because the TSBs expanded the warranty terms in violation of the MMWA's requirement that a warrantor disclose the terms and conditions of the warranty. 16 C.F.R. § 701.3 (requiring a warrantor to disclose the parts covered by the warranty and what the

12

warrantor will do in the event of a defect). The Court cannot agree. The MMWA imposes the duty to disclose information *only* when the warranty is part of the basis of the bargain for the item's purchase. 15 U.S.C. § 2301(6)(B) (defining a "written warranty" as one that becomes part of the basis of the bargain); 16 C.F.R. § 700.11(b) (same); 15 U.S.C. § 2302(a) ("[A]ny warrantor warranting a consumer product to a consumer by means of a *written warranty* shall . . . disclose . . .") (emphasis added); 16 C.F.R. § 701.3 (same). Thus, even if the TSBs acted as written (but silent) recall that expanded the new vehicle warranty's coverage or created a new warranty, they are not the defined "written warranty" that was part of the basis of the bargain in Ms. Kuns' purchase and subject to the disclosure obligations in the MMWA, so Ms. Kuns was not relieved of her obligation to present the car to a Ford dealer before claiming a breach of warranty.

Likewise, Ms. Kuns cannot maintain a breach of warranty claim for Ford's refusal to reimburse the money she spent at the glass installer. Ms. Kuns argues that the TSBs created a new warranty that did not require presentment and instead obligated Ford to reimburse the money she paid at the glass installer. She quotes Ford's letter to the NHTSA, where Ford assured the agency that it was addressing the glass breakage problem. (Opposition, Doc. 28-1 at 17 (quoting doc. 27-4 at 10 ("This [TSB] also advised that Ford would cover the cost of glass repair under provisions of the base warranty if there is no evidence of impact or external damage.")).) The letter to the NHTSA expressly says that Ford will cover the cost, "under provisions of the base warranty." The base warranty requires presentment, limits the remedy to repair or replacement, and does not provide for reimbursements in this case. (Warranty, Doc. 29-1.) Therefore, Ms. Kuns cannot maintain her claim that Ford breached a warranty created by the TSBs.

C. MERCHANTABILITY AND FITNESS FOR PURPOSE

Ms. Kuns contends Ford created both implied and express warranties of merchantability that the car was of high quality and fit for its intended use or purpose as a passenger vehicle. (Am. Compl, Doc. 32-2 at ¶ 44; Opposition, Doc. 28-1 at 11.) However, she has not pointed to evidence indicating that Ford created such an express warranty. *See* Ohio Rev. Code § 1310.17 (detailing affirmations, descriptions, samples, and models that will create an express warranty). Ms Kuns otherwise focuses her argument on the UCC's implied warranty of merchantability and implied warranty of fitness for a particular purpose. *See* Ohio Rev. Code §§ 1302.28 & 1302.29. In Ohio, these implied warranties are not enforceable against manufacturers who are not in privity with the purchaser. *Curl v. Volkswagen of Am., Inc.*, 871 N.E.2d 1141, 1147 (Ohio 2007) ("Ohio continues to require privity as to contract claims. In Ohio, purchasers of automobiles may assert a contract claim for breach of implied warranty of merchantability pursuant to the Magnuson–Moss Warranty Act, only against parties with whom they are in privity of contract."); *accord McKinney v. Bayer Corp.*, 744 F. Supp. 2d 733, 756 (N.D. Ohio 2010) (declining to create an exception to *Curl*, even where the consumer was the intended beneficiary of the manufacturer's agreement with its dealer). Ms. Kuns has pointed to no evidence indicating that she was in privity with Ford; her purchase was from a Ford dealer and no evidence indicates that the dealer was in an agent role in negotiating the car's sale on behalf of Ford. Therefore, Ms. Kuns cannot maintain an action for breach of implied warranties of merchantability and fitness for a particular purpose.

Ms. Kuns proposes that, even lacking privity, Ford could be strictly liable for harm caused by its sale of a product in defective condition. *See* R.C. §§ 2307.71, *et seq*; Restatement (Second) of Torts § 402A; *Temple v. Wean United, Inc.*, 364 N.E.2d 267, 270 (Ohio 1977) (adopting

Section 402A and noting, "Under Ohio law, a defect is considered to exist in a product which is not of good and merchantable quality, fit and safe for its ordinary intended use." (quotation omitted)).

Assuming for this discussion that the car contained a defective window when Ford sold it to its dealer (see R.C. § 2307.74), that Ford is in the business of selling cars, and that the car reached Ms. Kuns without substantial change or modification, Ms. Kuns still cannot maintain a strict liability claim to recover the cost of repairing the window. The parties dispute whether Ms. Kuns' purely economic damages – the cost of repairing the first window and the diminution of the vehicle's value – are recoverable in a tort action. *Compare Hartman v. Mercedes-Benz, U.S.A., L.L.C.*, No. 1:08-CV-03034, 2010 WL 907969 (N.D. Ohio Mar. 11, 2010) ("After review of the case law cited by the parties, the Court agrees that Ohio law is unclear on this matter, and the law cited does not address factual circumstances similar to the one before the Court.") *with* R.C. § 2307.71(A)(13) ("'Product liability claim' means a claim or cause of action that is asserted in a civil action pursuant to sections 2307.71 to 2307.80 of the Revised Code and that seeks to recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress, or physical damage to property *other than the product in question*." (emphasis added)). This 2005 revision to Ohio's code explicitly abrogates "all common law product liability claims or causes of action." § 2307.71(B); *accord Wimbush v. Wyeth*, 619 F.3d 632, 639 (6th Cir. 2010).

Ms. Kuns relies heavily on *Hartman* for her theory. 2010 WL 907969. While *Hartman*, which is an unpublished district court case, was decided after the effective date of the revised products liability statute, it entirely relies on *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*,

15

537 N.E.2d 624, 631 (1989), which was decided before the revision to the Code. *Hartman* does not cite to the Revised Code or provide analysis of whether the Code's updated language allows actions for economic loss. Furthermore, even before the revision to the Code, the Ohio Supreme Court had found that plaintiffs could not maintain product liability tort actions where they *only* alleged economic loss, as Ms. Kuns does. *Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1146 (Ohio 2002) ("Under the Product Liability Act, a claimant (including a governmental entity) cannot recover economic damages alone. Instead, in order to fall within the purview of the Act, and to be considered a 'product liability claim' under R.C. 2307.71(M), the complaint must allege damages other than economic ones."). As this Court sits in diversity jurisdiction with the task of anticipating how the Ohio Supreme Court would rule on this issue, *John Hancock Fin. Services, Inc. v. Old Kent Bank*, 346 F.3d 727, 733 (6th Cir. 2003), it cannot create an exception to the text of the Revised Code based on *Hartman* and create a products liability tort action to compensate Ms. Kuns' economic damages when the matter arises in contract law. Therefore, Ms. Kuns cannot maintain her products liability tort action against Ford.

V. CONCLUSION

The Court grants Ms. Kuns' motion to amend the complaint and orders her to file the proposed amended complaint forthwith. (Doc. 32.)

The Court grants Ford's motion for summary judgment as to all of Ms. Kuns' claims. (Doc. 22.)

IT IS SO ORDERED.

    s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE

16